UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PENNY LEWIS, individually and on behalf of all others similarly situated,<br><br>v.<br><br>CENTENE CORPORATION | Case No. 4:22-cv-00228<br>FLSA Collective Action<br>FED. R. CIV. P. 23 |

## PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Like many other companies across the United States, Centene's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Centene's organization.

3. In particular, hourly and non-FLSA-exempt workers, like Penny Lewis, were not paid for all overtime hours worked after the onset of the Kronos hack.

4. Centene could have easily implemented a system for recording and paying overtime hours to hourly and non-exempt employees until issues related to the hack were resolved.

5. But it didn't. Instead, Centene used prior pay periods or reduced payroll estimates to avoid paying overtime to these hourly and non-exempt employees.

6. Centene pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

7. The burden of the Kronos hack was made to fall on front-line workers—average Americans—who rely on the full and timely paymet of their wages to make ends meet.

8. Meanwhile, Centene's salaried, FLSA-exempt managers and executives continued to take home their full paychecks.

9. Centene's failure to pay overtime wages for all overtime hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* and applicable state law.

10. Lewis brings this lawsuit to recover these unpaid overtime wages and other damages owed by Centene to her and the hourly and non-exempt workers like her, who were the ultimate victims of not just the Kronos hack, but Centene's decision to make its hourly and non-exempt workers bear the economic burden for the hack.

11. It's not the first time Centene has refused to pay its hourly or non-exempt workers what they're owed.

12. For example, Lewis, and other Centene workers at the Lewis prison complex in Arizona weren't paid for all hours they worked each day, even when they worked over 40 in a workweek.

13. The US Department of Labor even conducted an investigation, found that Centene owed overtime to Lewis and other employees, and requested it issue backpay to Lewis and affected employees.

14. It never did.

15. This action seeks to recover the unpaid overtime wages and other damages owed by Centene to all these workers, along with the penalties, interest, and other remedies provided by federal and state law.

## JURISDICTION & VENUE

16. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Centene is headquartered in this District.

## PARTIES

18. **Plaintiff Penny Lewis** was, at all relevant times, an employee of Centene.

19. Lewis has worked for Centene since July 2019.

20. Lewis's written consent is attached as Exhibit A.

21. Lewis represents at least two groups of similarly situated Centene workers.

22. Lewis represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former employees of Centene who were paid by the hour or who were non-exempt under the FLSA and who worked for Centene in the United States at any time since the onset of the Kronos ransomware attack in 2021 to the present.**

23. Lewis represents a class of similarly situated hourly employees under Arizona law pursuant to Federal Rule of Civil Procedure 23. This "Arizona Class" is defined as:

> **All current or former employees of Centene who were paid by the hour or who were non-exempt under the FLSA and who worked for Centene in Arizona at any time since the onset of the Kronos ransomware attack in 2021 to the present.**

24. Together, throughout this Complaint, the FLSA Collective members and Arizona Class Members are referred to as the "Similarly Situated Workers."

25. **Defendant Centene Corporation d/b/a Centurion Health f/k/a MHM Services, Inc. ("Centene")** is an foreign corporation.

26. Centene maintains its headquarters and principal place of business in this District.

27. Centene may be served by service upon its registered agent, **CT Corporation System, 120 South Central Ave., Clayton, MO 63105**, or by any other method allowed by law.

### COVERAGE UNDER THE FLSA

28. At all relevant times, Centene was an employer of Lewis within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

29. At all relevant times, Centene was and is an employer of the National and FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30. Centene was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

31. During at least the last three years, Centene has had gross annual sales in excess of $500,000.

32. Centene was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

33. Centene employs many workers, including Lewis, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

34. The goods and materials handled, sold, or otherwise worked on by Lewis, and other Centene employees and that have been moved in interstate commerce include, but are not limited to, computers, peripherals, and electronic equipment.

## FACTS

35. Centene is a managed care and health care corporation that operates and serves both government sponsored and privately insured health care programs. Fortune, Centene, https://fortune.com/company/centene/ (last accessed Feb. 23, 2022).

36. Centene was ranked No. 24 on Forbes' Fortune 500 list for 2021.

37. Centene employs around 72,500 people. Centene, Who We Are, https://www.centene.com/who-we-are.html (last accessed Feb. 23, 2022).

38. Many of Centene's 72,500 employees are paid by the hour or are non-exempt salaried workers.

39. Since at least 2021, Centene has used timekeeping software and hardware operated and maintained by Kronos.

40. In 2021, Kronos was hacked with ransomware .

41. The Kronos interfered with its clients, including Centene's, ability to use Kronos's software and hardware to track hours and pay employees.

42. Since the onset of the Kronos hack, Centene has not kept accurate track of the hours that Lewis and other similarly situated employees have worked.

43. Instead, Centene has estimated the number of hours Lewis and other similarly situated employees have worked in each pay period.

44. Even worse, Centene has issued paychecks based on their scheduled hours, or has simply duplicated paychecks from pay periods prior to the Kronos hack.

45. This means that employees who were either hourly or non-exempt, and who worked overtime, were in many cases paid less than the hours they worked in the workweek, including overtime hours.

46. Lewis is one such employee.

47. Instead of paying Zeigler for the hours she actually worked (including overtime hours), Centene simply paid based on the lower, pre-Kronos number of hours she happened to work.

48. Centene knows it has to pay overtime to hourly and non-exempt employees.

49. Centene knows this because, prior to the Kronos hack, it routinely paid these workers overtime.

50. Centene could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

51. Instead of accurately tracking hours and paying employees their overtime, Centene decided to arbitrarily pay these employees, without regard to the overtime they were owed.

52. It was feasible for Centene to have its employees and managers report accurate hours so they could be paid for the work they did for the company.

53. But it didn't do that.

54. In other words, Centene pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

55. Lewis is one such employee.

56. Lewis was and is an hourly employee of Centene.

57. Lewis regularly works over 40 hours per week for Centene.

58. Lewis's normal, pre-Kronos hack hours are reflected in Centene's records.

59. After the Kronos hack, however, Centene paid Lewis only at the same number of hours as her last paycheck prior to the hack rather than her actual hours worked each week, even though Lewis was working more than those hours each week after the hack.

60. Since the hack took place, Centene has not been accurately recording the hours worked by Lewis and its other workers.

61. Centene was aware of the overtime requirements of the FLSA.

62. Centene nonetheless failed to pay certain hourly and non-exempt employees, such as Lewis, overtime.

63. Centene's failure to pay overtime to these hourly and non-exempt workers was, and is, a willful violation of the FLSA.

64. Centene has long known about the FLSA's requirements.

65. Centene has also violated the FLSA before.

66. Lewis, for example, was one of many Centene employees who were not paid for all hours worked at the Arizona State Prison – Lewis.

67. Lewis and other Centene hourly workers at the Arizona State Prison – Lewis were able to clock in only after going through at least 30-45 minutes of security screening and other preliminary check-in procedures each day.

68. Lewis and other Centene hourly workers at the Arizona State Prison – Lewis then had to clock out when they had another 30-45 minutes, or more, of check-out procedures.

69. Lewis and other Centene hourly workers at the Arizona State Prison – Lewis were not paid for this time or other hours they worked for Centene.

70. The US Department of Labor invesitigated and found Centene owed unpaid wages to Lewis and the other workers.

71. To date, however, these wages remain unpaid.

72. Centene continues to flaunt federal and state wage laws.

## COLLECTIVE ACTION ALLEGATIONS

73. Lewis incorporates all other allegations.

74. Numerous individuals were victimized by Centene's patterns, practices, and policies, which are in willful violation of the FLSA.

75. Based on her experiences and tenure with Centene, Lewis is aware that Centene's illegal practices were imposed on the FLSA Collective.

76. The FLSA Collective members were not paid for all overtime hours worked.

77. These employees are victims of Centene's respective (to each Collective) unlawful compensation practices and are similarly situated to Lewis in terms of the pay provisions and employment practices at issue in the respective collectives in this lawsuit.

78. The workers in each collective were similarly situated within the meaning of the FLSA.

79. Any differences in job duties do not detract from the fact that these hourly and non-exempt workers were entitled to overtime pay.

80. Centene's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

81. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

82. Lewis incorporates all other allegations.

83. The illegal practices Centene imposed on Lewis were likewise imposed on the Arizona Class Members.

84. Numerous other individuals who worked for Centene were were not properly compensated for all hours worked, as required by Arizona law.

85. The Arizona Class is so numerous that joinder of all members of the class is impracticable.

86. Centene imposed uniform practices and policies on Lewis and the Arizona Class members regardless of any individualized factors.

87. Based on her experience and tenure with Centene, as well as coverage of the Kronos hack, Lewis is aware that Centene's illegal practices were imposed on the Arizona Class members.

88. Arizona Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

89. Centene's failure to pay wages and overtime compensation in accordance with Arizona law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Arizona Class Members.

90. Lewis's experiences are therefore typical of the experiences of the Arizona Class members.

91. Lewis has no interest contrary to, or in conflict with, the members of the Arizona Class. Like each member of the proposed class, Lewis has an interest in obtaining the unpaid overtime wages and other damages owed under the law.

92. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

93. Absent this action, many Arizona Class members likely will not obtain redress of their injuries and Centene will reap the unjust benefits of violating Arizona law.

94. Furthermore, even if some of the Arizona Class members could afford individual litigation against Centene, it would be unduly burdensome to the judicial system.

95. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

96. The questions of law and fact common to each of the Arizona Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether the Arizona Overtime Class Members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

   b. Whether Centene's failure to pay overtime at the rates required by law violated the Arizona Wage Act;

   c. Whether Centene knowingly benefitted at the expense of the Arizona Class members; and

   d. Whether allowing Centene to retain the benefit it obtained at the expense of the Arizona Class members would be unjust.

97. Lewis's claims are typical of the Arizona Class members. Lewis and the Arizona Class members have all sustained damages arising out of Centene's illegal and uniform employment policies.

98. Lewis knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

99. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—VIOLATIONS OF THE FLSA

100. Lewis incorporates each other allegation.

101. Centene has violated, and is violating, section 7 of the FLSA, 29 U.S.C. § 207, by compensating employees on an hourly basis in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating the FLSA Collective members for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

102. Centene knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

103. Centene's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

104. Accordingly, Lewis and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE ARIZONA WAGE ACT

105. Lewis incorporates all other allegations.

106. The conduct alleged in this Complaint violates the Arizona Wage Act, ARS 23-350, et seq.

107. Centene was and is an "employer" within the meaning of the Arizona Wage Act. ARS § 23-350(3).

108. At all relevant times, Centene employed Lewis and each other Arizona Overtime member as "employees" within the meaning of the Arizona Wage Act. ARS § 23-350(2).

109. Lewis and the other Arizona Overtime Class members were required by law to be paid overtime wages for all overtime hours worked.

110. Lewis and the other Arizona Overtime Class members had a reasonable expectation Centene would pay them wages as required by the FLSA.

111. Lewis and the other Arizona Overtime Class members had a reasonable expectation Centene would pay them wages as required by federal law.

112. Lewis and the other Arizona Overtime Class members had a reasonable expectation Centene would pay them wages as required by Arizona law.

113. Lewis and the other Arizona Overtime Class members had a reasonable expectation Centene would pay them at a rate at least 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek.

114. Within the applicable limitations period, Centene had a policy and practice of failing to pay proper overtime to the Arizona Overtime Class members for their hours worked in excess of 40 hours per week.

115. The wages and overtime owed to Lewis and each other Arizona Overtime member were due to be paid not later than 16 days after the end of the of the most recent pay period. ARS § 23-351(C)(3).

116. The wages and overtime owed to each Arizona Overtime member who left the employment of Centene were due to be paid not later seven days after termination, or at the end of the next regular pay period. ARS § 23-353(A)-(B).

117. The Arizona Wage Act prohibits an employer from withholding or diverting any portion of an employee's wages unless they are required or empowered to do so by state or federal law, or the employee has authorized the withholding in writing. ARS § 23-352.

118. Centene was not required under Arizona or federal law to withhold the wages and overtime pay due to Lewis and the Arizona Overtime Class members.

119. Centene was not empowered under Arizona or federal law to withhold the wages and overtime pay due to Lewis and the Arizona Overtime Class members.

120. Neither Lewis nor the Arizona Overtime Class members authorized Centene to withhold the wages and overtime pay due to them.

121. Centene has not paid these overtime wages to Lewis and each other Arizona Overtime member.

122. As a result of Centene's failure to pay proper overtime to Lewis and the Arizona Overtime Class members for work performed in excess of 40 hours in a workweek, Centene violated the Arizona Wage Act.

123. Lewis and the Arizona Overtime Class members are entitled to overtime wages under Arizona law in an amount equal to three times their unpaid wages, plus attorney's fees and costs. ARS § 23-355(A).

### THIRD CAUSE OF ACTION—UNJUST ENRICHMENT

124. Lewis incorporates all other allegations.

125. Centene's acts and omissions in denying proper overtime pay to Lewis and the Arizona Class members was done knowingly, willfully, or with reckless disregard to the rights of Lewis and the Arizona Class members.

126. As a result of its unlawful acts and omissions, Centene received substantial benefit in the form of financial compensation that rightfully belonged to Lewis and the Arizona Class Members.

127. It would be unjust to allow Centene to retain these benefits, which were gained through unlawful means, including but not limited to, failing to pay Lewis and the Arizona Class members the wages and overtime they were entitled to under Arizona law.

128. Centene has been unjustly enriched by its unlawful acts and omissions.

### DAMAGES

129. Centene's acts and omissions, individually and collectively, caused Lewis and the Similarly Situated Workers to sustain legal damages.

130. Lewis and the FLSA Collective members are entitled to overtime wages in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages, attorney's fees, and costs. 29 U.S.C. § 216(b).

131. Lewis and the Arizona Overtime Class members are entitled to overtime wages under the Arizona Wage Act in an amount equal to three times their unpaid wages, plus attorney's fees and costs. ARS § 23-355(A).

132. Lewis and the Arizona Class members are entitled to recover for Centene's unjust enrichment, including restitution and penalties.

133. Lewis and the Similarly Situated Workers are entitled to recover attorneys' fees and costs of court.

134. Lewis and the FLSA Collective members are entitled to recover liquidated damages under the FLSA.

135. Lewis and the Arizona Overtime Class members are entitled to treble damages under the Arizona Wage Act.

136. Lewis and the Similarly Situated Workers are entitled to pre- and post-judgment interest at the maximum legal rates.

137. A constructive trust should be imposed on Centene, and the Court should sequester any benefits or money wrongfully received by Centene at the expense of Lewis and the Arizona Class members.

**RELIEF SOUGHT**

Lewis prays for judgment against Centene as follows:

    a. For an order certifying a collective action for the FLSA claims;

    b. For an order certifying a class action for the Arizona law claims;

    c. For an order finding Centene liable for violations of state and federal wage laws with respect to Lewis and all FLSA Collective and Arizona Class members covered by this case;

    d. For a judgment awarding all unpaid wages, liquidated damages, and penalty damages, to Lewis and all FLSA Collective members covered by this case;

    e. For a judgment awarding all unpaid wages, treble damages, penalty damages, and punitive damages, to Lewis and all Arizona Class members covered by this case;

    f. For an order finding Centene was unjustly enriched by its violations of Arizona law with respect to Lewis and all Arizona Class members covered by this case;

    g. For an order imposing a constructive trust on Centene and sequestering the benefits and monies that it wrongfully obtained at the expense of Lewis and the Arizona Class members;

    h. For an order awarding restitution, penalties, and exemplary damages to Lewis and all Arizona Class members covered by this case;

    i. For a judgment awarding costs of this action to Lewis all FLSA Collective and Arizona Class members covered by this case;

    j.    For a judgment awarding attorneys' fees to Lewis and all FLSA Collective and Arizona Class members covered by this case;

    k.    For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Lewis and all FLSA Collective and Arizona Class members covered by this case; and

    l.    For all such other and further relief as may be necessary and appropriate.

Date:  <u>Feb. 24, 2022</u>

Respectfully submitted,

By:   */s/ Matthew S. Parmet*
      **Matthew S. Parmet**
      E.D. Mo. Bar # 24069719(TX)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**