UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PENNY LEWIS, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br>v.<br><br>MHM HEALTH PROFESSIONALS, LLC f/k/a/ MHM HEALTH PROFESSIONALS, INC. d/b/a CENTURION<br><br>  Defendant. | Case No. 4:22-cv-00228-SEP |

## MEMORANDUM AND ORDER

Before the Court is Defendant MHM Health Professionals' Partial Motion to Dismiss Second Amended Complaint, Doc. [38]. The motion is fully briefed and ready for disposition. *See* Docs. [38], [39], [45], [48]. For the reasons set forth below, the motion is granted in part and denied in part.

### FACTS AND BACKGROUND[1]

Defendant MHM Health Professionals (MHM), doing business as Centurion, provides healthcare services to prisons. Doc. [34] ¶ 49. Plaintiff Penny Lewis works for MHM at a prison complex in Arizona. *Id.* ¶ 25. After the Department of Labor (DOL) investigated and identified problems with MHM's compensation practices,[2] Plaintiff brought claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, and Arizona state law, both individually and on behalf of various subgroups of MHM workers. Doc. [34] ¶ 29. As relevant to the partial motion to dismiss, Plaintiff alleges that MHM uses timekeeping practices that do not properly compensate employees for meal breaks and time spent in security screenings. *Id.* ¶¶ 12-13.

Plaintiff alleges that "MHM deducted time for meal breaks—even when . . . workers didn't take a break." *Id.* ¶ 13. MHM purported to allow "employees [to] get another employee

---

[1] For purposes of the instant motion, the Court takes the factual allegations in the Second Amended Complaint, Doc. [34], to be true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

[2] Plaintiff attached the DOL's Wage and Hour Investigative Support and Reporting Database (WHISARD) Compliance Action Report to her complaint. Doc. [34-1] [hereinafter DOL Report]. Accordingly, the DOL Report "is a part of the pleading for all purposes." Fed. R. Civ. Pro. 10(c).

to cover the break or . . . submit a Time Keeping Exemption (TKE) sheet," but "the TKE process was burdensome and [Plaintiff] and the [other MHM employees] were actively discouraged or retaliated against for doing so." *Id.* ¶ 94. And employees who did submit a TKE sheet were "nevertheless not paid." *Id.* ¶ 95. Plaintiff also alleges that MHM did not pay her and other employees for security screenings on the way in to and out of work. *Id.* ¶¶ 97-107. Those screenings "added another 30 to 45 minutes, or more, of unpaid work each day." *Id.* ¶ 107.

Plaintiff challenges MHM's meal-break and security-screening practices through three causes of action. First she claims that the practices violate the FLSA. She brings the FLSA claims in her individual capacity and on behalf of similarly situated workers—the "FLSA Meal-Break Collective" and the "FLSA Security Collective." *Id.* ¶¶ 149-57. Plaintiff defines the FLSA Meal-Break Collective as:

> All current or former non-exempt employees of MHM who worked at a correctional facility in the United States at any time from February 24, 2019, to the present, were assigned a shift of at least 6 hours, and had a 30-minute meal break automatically deducted from their time.

*Id.* ¶ 31. And she defines the FLSA Security Collective as:

> All current or former non-exempt employees of MHM who worked at a correctional facility in the United States at any time from February 24, 2019, to the present and were not paid for time spent in security screenings, performing clock in/out procedures, and/or for Covid testing before or after their assigned shift.

*Id.* ¶ 32. In her second cause of action, Plaintiff claims that MHM's practices violate the Arizona Wage Act (AWA). Ariz. Rev. Stat. Ann. §§ 23-350 to 362. She brings the AWA claims individually and on behalf of the "AWA Meal-Break Class" and "AWA Security Class." *Id.* ¶¶ 158-77. Plaintiff defines the AWA Meal-Break Class and AWA Security Class the same way she defines the FLSA collectives but limited to workers in Arizona. *Id*. ¶¶ 34-35. And in her third cause of action, Plaintiff brings unjust enrichment claims individually and on behalf of the AWA Meal-Break and Security Classes. *Id.* ¶¶ 178-84.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." To meet this standard and survive a

2

Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Determining if well-pled factual allegations "plausibly give rise to an entitlement to relief" is a "context-specific" task requiring the Court to "draw on its judicial experience and common sense." *Id.* at 679, 682.  The factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  In determining the plausibility of a plaintiff's claim, *Iqbal* and *Twombly* instruct the Court to consider whether "obvious alternative explanations" exist for the allegedly unconstitutional conduct.  *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567.  The Court must then determine whether the plaintiff plausibly alleges a violation of the law. *Iqbal*, 556 U.S. at 679.  The well-pled facts must establish more than a "mere possibility of misconduct." *Id.*

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff," *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010), and "grant all reasonable inferences in favor of the nonmoving party," *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009)).  But if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Although courts must accept all well-pled factual allegations as true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Iqbal*, 556 U.S. at 677-78.

## DISCUSSION

Defendant advances several arguments for dismissal of Plaintiff's claims:  (1) the FLSA claims based on security screenings fail to state a claim because security screenings are not a part of Plaintiff's principal activities; (2) the FLSA and AWA security-screening claims should be dismissed because security screenings are not "work"; (3) the meal-break claims do not satisfy

the requirements for collective claims under the FLSA or for class claims under Federal Rule of Civil Procedure 23; and (4) the state-law claims are preempted by the FLSA.

**I.       Plaintiff's FLSA claims related to security screenings do not state a claim on which relief can be granted.**

Plaintiff claims that she, the FLSA Security Collective, and the AWA Security Class were not paid for the time spent going through security screenings.  Defendant argues that those claims must be dismissed because security screenings are not integral and indispensable to the Plaintiff's principal activities.  The Court agrees with Defendant.

     **A.       FLSA Standard**

The FLSA requires covered employers to pay their employees at least time-and-a-half for overtime hours worked.  *See* 29 U.S.C. § 207.  In *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, the Supreme Court interpreted "work" broadly to include "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  321 U.S. 590, 598 (1944).  After that broad interpretation caused a flood of FLSA litigation, Congress passed the Portal-to-Portal Pay Act to exclude some activities from the FLSA's compensation requirements:

> [N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act . . . on account of the failure of such employer to pay an employee . . . for or on account of any of the following activities . . .
>
> > (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
> >
> > (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

Under the FLSA and Portal-to-Portal Act, an employee is entitled to compensation for his "principal activities."  In *Integrity Staffing Solutions, Inc. v. Busk*, the Supreme Court clarified that an employee's "principal activities" include the work the employee is "employed to perform" and "all activities which are an 'integral and indispensable part of the principal activities.'"  574 U.S. 27, 33 (2014) (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005)).

4

An activity is "integral and indispensable to the principal activities"—and thus *part of* the employee's principal activities—"if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.*

Under *Integrity Staffing*, determining whether Plaintiff has stated an FLSA claim involves a two-step inquiry: (1) "[D]efine [Plaintiff's] principal activities," as described in the complaint; and (2) determine if the "uncompensated functions at issue are part of those activities." *Medrano v. United States*, 159 Fed. Cl. 537, 543-44 (2022). If the Court can reasonably infer that the uncompensated functions are part of the principal activities, then it must deny Defendant's motion to dismiss.

### B. Plaintiff's "principal activity" is providing healthcare services in correctional facilities.

The Second Amended Complaint provides very little description of Plaintiff's principal activities. Plaintiff pleads that MHM "provides healthcare and staffing services to correctional systems and other government agencies." Doc. [34] ¶ 49. And her brief in opposition to the motion to dismiss describes her and her fellow employees' principal activities as "providing healthcare services in correctional facilities." Doc. [45] at 3. The Court accepts that definition of their principal activities for the purpose of this analysis and move to the next question: whether the uncompensated activity—security screening—is integral and indispensable to providing healthcare services in correctional facilities.

### C. Security screenings are not integral and indispensable to Plaintiff's principal activities.

An uncompensated function can be a principal activity in two ways. It can be "the 'principal activity or activities which [the] employee is employed to perform,'" or it can be "integral and indispensable" to that activity or activities. *Integrity Staffing*, 574 U.S. at 35 (alteration in original) (quoting 29 U.S.C. § 254(a)(1)). The parties agree that "[n]o person is hired to undergo security screenings." Doc. [45] at 3. But they disagree on whether screenings are integral and indispensable to providing healthcare services in correctional facilities.

Plaintiff argues the screenings are integral and indispensable because they allow MHM employees to provide healthcare services safely and effectively. Doc. [45] at 4. Citing the DOL report, Plaintiff argues that the screenings "are necessary to prevent the 'threat' from 'unauthorized items' entering the prison." *Id.* at 4-5. Screening may contribute to a safe environment, but it does not follow that screening Plaintiff and other MHM employees is

5

indispensable to their work providing healthcare services. The Court of Federal Claims' recent decision in *Medrano v. United States* provides a helpful hypothetical to illustrate this point:

> Suppose two prison employees came to work at the same duty post on the same day, neither one carrying contraband. Even if one was screened and the other was not, nothing in the Amended Complaint suggests they could not perform their own duties equally well. Or suppose two hypothetical prisons, one of which screened all its employees and one of which did not. The safety and effectiveness of the employees inside the prison would depend on whether they introduced contraband, not on whether they were screened.

159 Fed. Cl. at 546. The principle illustrated in the hypothetical distinguishes Plaintiff's case from the cases she relies on. In *Mitchell v. King Packing Co.*, the Supreme Court held that "knifemen" in a meat packing plant had to be paid for "knife-sharpening activities" because having a sharp knife is an "integral part of and indispensable to the various butchering activities for which they were principally employed." 350 U.S. 260, 262-63 (1956). Sharpening is a principal activity because a butcher cannot do his job without a sharp knife. Using the framework from the hypothetical above, imagine two butchers, one who sharpened his knife and one who did not. The sharp-knifed butcher would be able to do his job better than the dull-knifed butcher. That is not true of prison healthcare employees and security screening. Unless an employee is bringing in contraband that undermines her ability to do her own job, screening does not affect her ability to do her job.

*Steiner v. Mitchell* does not help Plaintiff either. 350 U.S. 247 (1956). *Steiner* involved "workers in a battery plant" whose principal activities required "extensive use of dangerously caustic and toxic materials" that "permeate[d] the entire plant and everything and everyone in it." *Id.* at 248-49. The Supreme Court found that "vital considerations of health and hygiene" made time spent showering and changing integral and indispensable. *Id.* at 248. If an individual factory worker stopped showering and changing, the toxic health effects of his principal activities would prevent him from doing them. Not so for Plaintiff and the other MHM employees. If Plaintiff stopped getting screened, there is no reason to think it would interfere with her principal activity of providing healthcare services.

Plaintiff also argues more broadly that the security screenings are essential to prison healthcare services because they help maintain the "health and safety of the inmate population." Doc. [45] at 5. "[T]he screenings [are] not dispensable, but [are] necessary to the safe and efficient delivery of healthcare services, and for the safety and health of the inmates (i.e.[,] the

6

service provided)." *Id.* at 9.  It may be true that eliminating screenings would allow more contraband into the prison, which would increase overall risk and have a detrimental effect on prisoners' health.  "But even then, it is still irrelevant to the *Integrity Staffing* test, which focuses solely on indispensability to '*the employee.*' . . . The *prisons* may not be able to dispense with screenings . . . but nothing in the [Second] Amended Complaint suggests that *Plaintiff*[] cannot." *Medrano*, 159 Fed. Cl. at 546 (internal citation omitted).

      Plaintiff argues that Defendant's construction of the Portal-to-Portal Act and Supreme Court precedent is "impermissibly narrow." Doc. [45] at 6.  But the words "integral and indispensable" create a stringent test.  *See Integrity Staffing*, 574 U.S. at 33 ("The word 'integral' means '[b]elonging to or making up an integral whole; constituent, component; *spec[ifically]* necessary to the completeness or integrity of the whole; forming an intrinsic portion or element, as distinguished from an adjunct or appendage.' 5 Oxford English Dictionary 366 (1933) (OED); . . . And, when used to describe a duty, 'indispensable' means a duty '[t]hat cannot be dispensed with, remitted, set aside, disregarded, or neglected.' 5 OED 219 . . . ." (alterations in original)).  Plaintiff's restatement of the *Integrity Staffing* test misstates the meaning of "integral and indispensable."  Plaintiff argues, "the test is whether the security screening is tied to the productive work they are employed to perform." Doc. [45] at 7.  That formulation takes the phrase "tied to the productive work" from *Integrity Staffing* out of context.  The Supreme Court explained that the integral and indispensable *inquiry* is "tied to the productive work the employee is employed to perform," and is not satisfied by everything an employer requires as a condition of employment.  574 U.S. at 36.  It did not hold that every function that is "tied to" an employee's productive work is "integral and indispensable."  Such a broad definition of "integral and indispensable" would "sweep into 'principal activities' the very activities that the Portal-to-Portal Act was designed to address." *Id.*

      Plaintiff also urges the Court to ask whether the uncompensated function "may be eliminated without impairing employees' ability to perform their work safely and effectively." Doc. [45] at 7.  But that again is far broader standard than being "an ***intrinsic*** element of [the employee's principal] activities and one with which the employee ***cannot dispense*** if he is to perform those activities." *Integrity Staffing*, 574 U.S. at 35 (emphases added).  Removing a rear-view mirror from a car may impair the driver's ability to drive safely and effectively, but that does not make the rear-view mirror intrinsic or indispensable to the activity of driving.  One

7

could still drive without a rear-view mirror, whereas one could not drive without a steering wheel or a gas pedal.

Plaintiff's argument is also irreconcilable with *Integrity Staffing*'s discussion of a Department of Labor opinion letter that "found noncompensable a preshift security search of employees in a rocket-powder plant 'for matches, spark producing devices such as cigarette lighters, and other items which have a direct bearing on the safety of the employees.'" 574 U.S. at 35. The Supreme Court noted that the "Department drew no distinction between the searches conducted for the safety of the employees and those conducted for the purpose of preventing theft—neither were compensable under the Portal-to-Portal Act." *Id.* at 36. If searches to prevent sparks in a rocket-powder plant were not integral to the workers' activities—and the Supreme Court did not think they were—then a security search is not integral to MHM's employees' provision of healthcare services in the prison context. The fact that screening decreases risk, even significant risk, is not enough to make it integral and indispensable.

*Aguilar v. Management & Training Corporation* does not undermine the Court's conclusion. 948 F.3d 1270 (10th Cir. 2020). Putting aside whether *Aguilar* was correctly decided,[3] it is distinguishable. The plaintiffs in *Aguilar* were corrections officers whose principal activities included "maintaining 'the custody and discipline of inmates,' 'supervising detainees,' 'searching for contraband[,] and providing security.'" *Id.* at 1277 (alteration in original) (quoting record). The Tenth Circuit found that screening was done to keep weapons and contraband from entering the prison and that "keeping weapons and other contraband out of the prison is necessarily 'tied to' the officers' work of providing prison security and searching for contraband." *Id.* at 1278. Assuming that analysis is correct, it does not apply to Plaintiff and her fellow MHM employees. They are not corrections officers, and their principal activities do not include "providing prison security and searching for contraband." *Id.* The Second Amended Complaint does not include facts that allow the Court to draw that inference.

Plaintiff argues that "the fact that the [integral and indispensable] inquiry is context specific further militates against resolution of these issues at the dismissal stage." Doc. [45] at 6 n.3. "But *Integrity Staffing* itself was decided on a motion to dismiss," so it "follows that the

---

[3] *But see Medrano*, 159 Fed. Cl. at 547 ("Plaintiffs' principal contrary authority, *Aguilar v. Management & Training Corp.*, is against the weight of caselaw. It is also wrongly decided.") (citation and footnote omitted).

8

relationship between screenings and an employee's principal activities is best determined as a matter of law when the pleadings allow." *Medrano*, 159 Fed. Cl. at 548-49.  "[T]here are no facts consistent with the pleadings that Plaintiff[] might adduce to show that undergoing screening is part of [her] productive work, or that screening itself is integral and indispensable to that work." *Id.* (citing *Twombly*, 550 U.S. at 563).  Plaintiff's proposed Third Amended Complaint does not allege any facts that would alter the Court's analysis.  The Third Amended Complaint makes explicit some of the inferences the Court was already willing—and in fact required—to draw from the Second Amended Complaint.  Doc. [45] ¶¶ 113-31.  The Court addressed Plaintiff's arguments related to those additional facts and found them unpersuasive.  The amendments related to security screenings are therefore futile, and the Court will not grant leave to amend those portions of the Second Amended Complaint.  Because Plaintiff has not stated a claim under the FLSA for the time spent in security screening, that claim is dismissed.

## II.   The Third Amended Complaint states a claim for relief under the AWA based on security screenings.

Defendant also argues that Plaintiff's FLSA and AWA claims must be dismissed because security screenings are not "work" under the FLSA or AWA.  Because the FLSA security-screening claims will be dismissed for the reasons already stated, the Court will consider the argument as to only the AWA claim.

The parties agree that the definition of work under Arizona law is "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn. Coal, Iron & R. Co.*, 321 U.S. at 598.  Defendant maintains that the screenings cannot be "work" because they are not "required or controlled by MHM" and are "within the exclusive control of the prisons." Doc. [39] at 10.  Defendant argues that the Plaintiff does not plausibly plead that it controlled or required the screenings because the Second Amended Complaint states passively that Plaintiff was "required to . . . clear security," Doc. [34] ¶ 98, and the DOL Report says that "[t]he prison requires mandatory security screenings," Doc. [34-1] at 9.  According to Defendant, an amendment to fix this problem "is futile because it contradicts Plaintiff's original allegations as asserted in the attached DOL Report."  Doc. [48] at 4.

The Court disagrees.  Plaintiff's proposed amendment does not contradict the assertion in the DOL report.  It could be that *both* the prison *and* Defendant require security screenings.  That

was the case in *Barrentine v. Arkansas-Best Freight System, Inc.*, where the Eighth Circuit found a pre-trip safety inspection for truck drivers was required by both federal regulation and the employer. 750 F.2d 47, 50 (8th Cir. 1984) ("The fact that a pre-trip safety inspection is required by federal regulations does not remove the employer's control over and responsibility for this inspection."). *Cazares v. Host International, Inc.*, which applied California law, does not persuade the Court that security screenings are not work as a matter of Arizona law. 2021 WL 3667227 (9th Cir. July 9, 2021). The Third Amended Complaint plausibly states a claim by pleading, "Regardless of whether MHM itself has a screening requirement for its employees, it requires its Correctional Healthcare Employees to adhere to its prison clients' policies regarding screening." Doc. [45] ¶ 113. Therefore, Plaintiff may amend the Second Amended Complaint to address that deficiency, and Plaintiff's AWA claims based on security screenings survive.

### III. The Third Amended Complaint states a claim for individual, collective, and class meal-break claims.

#### A. The Third Amended Complaint states an individual meal-break claim.

Defendant "concedes that Paragraphs 99 and 102-103 of the [Third Amended Complaint] satisfy [Plaintiff's] pleading burden as to an individual meal break claim and does not object to amendment of the [Second Amended Complaint] to include those allegations." Doc. [48] at 11. The Court grants Plaintiff leave to amend the Second Amended Complaint accordingly.

#### B. Plaintiff's FLSA collective claims are limited to Arizona workers.

Defendant moves to dismiss Plaintiff's FLSA meal-break claims on behalf of non-Arizona workers. *See* Doc. [39] at 14-15. Plaintiff agrees to "limit her proposed collectives at this time to MHM's Arizona employees" but claims she can "adjust the proposed collective based on discovery and developments in this case." Doc. [45] at 21. Because the parties agree that the FLSA Meal-Break Collective should be limited to Arizona workers at this time, the Court orders Plaintiff to limit the FLSA Meal-Break Collective to Arizona workers in the Third Amended Complaint. Plaintiff may, of course, seek leave to amend the Third Amended Complaint under Federal Rule of Civil Procedure 15 again in the future.

#### C. The Third Amended Complaint states collective and class meal-break claims.

Because collective actions under the FLSA are governed by different standards than class actions under Federal Rule of Civil Procedure 23, the Court addresses Defendant's challenges to

10

the collective and class claims separately. *See Houston v. Saint Luke's Health Sys., Inc.*, 76 F.4th 1145, 1148 n.1 (8th Cir. 2023).

### 1. *FLSA Meal-Break Collective*

The FLSA allows an employee to bring an action "for and [on] behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). But "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* The FLSA does not define "similarly situated," and the Eighth Circuit has not "decided on a standard to use in determining 'whether potential opt-in plaintiffs are "similarly situated" under § 216(b).'" *Salone v. Cushman & Wakefield U.S., Inc.*, 2022 WL 123789, at *2 (E.D. Mo. Jan. 13, 2022) (quoting *Beasely v. GC Servs. LP*, 270 F.R.D. 442, 444 (E.D. Mo. 2010)). District courts tend to use one of two approaches: (1) a two-step process consisting of a lenient "conditional certification" followed by a more rigorous review at the close of discovery; or (2) application of Federal Rule of Civil Procedure 23's requirements for class certification. *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 436-37 (5th Cir. 2021) (describing the history of the two approaches). The first approach is more widely used and has been adopted by district courts in this circuit. *See Salone*, 2022 WL 123789, at *2. But neither approach is designed for the pleading stage. At this point, the Court need only consider whether the Complaint plausibly states that members of the FLSA Meal-Break Collective are similarly situated. *See Arnold v. DirecTV, Inc.*, 2011 WL 839636, at *7 (E.D. Mo. Mar. 7, 2011) ("[W]here the Court has held that the Plaintiff's allegations of violations of the federal and state statute are sufficient to withstand a motion to dismiss for failure to state a claim, a motion to dismiss is not the proper vehicle to address the validity of the collective/class allegations." (citing *Tahir v. Avis Budget Grp., Inc.*, 2009 WL 4911941, at *9 (D.N.J. Dec. 14, 2009))).

Defendant argues that members of the collective are not similarly situated because the DOL Report "demonstrates the individualized issues with respect to Plaintiff's meal break claims." Doc. [48] at 10. The DOL Report shows that employees had a variety of problems with the meal-break policy: They submitted TKE sheets but did not get reimbursed; they chose not to submit TKE sheets because of a negative stigma from management; or they just did not feel like submitting TKEs. Doc. [34-1] at 9. Some employees reported "no issues." *Id.* at 10. Defendant argues that the differences create a "hodgepodge of individualized inquiries" unsuitable for a

11

collective action.  Doc. [39] at 13.  And preliminary discovery may prove that to be the case. But drawing all reasonable inferences in Plaintiff's favor, she has plausibly pled that members of the FLSA Meal-Break Collective are similarly situated.  All of the employees worked as healthcare service providers in prisons; they were all treated as hourly non-exempt employees; and they all had meal-break deductions applied to their pay.  The DOL Report also provides some evidence that "they were all victims of a single decision, policy, or plan—namely, [Defendant's] . . . practice of requiring that meal-break deductions be applied to . . . employees' compensable hours even when meal breaks were not taken or were interrupted by work duties." *Salone*, 2022 WL 123789, at *3.  That level of similarity is sufficient to state a claim for relief.

### 2. AWA Meal-Break Class

While "class claims that fail to meet the requirements of Rule 23 may be properly dismissed by granting a Rule 12(b)(6) motion," *McCrary v. Stifel, Nicolaus & Co.*, 687 F.3d 1052, 1059 (8th Cir. 2012), "[t]he propriety of class action status can seldom be determined on the basis of the pleadings alone." *Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir. 1977).  "Courts in this Circuit have repeatedly stated that motions to dismiss class allegations should be met 'with a great deal of skepticism,' and that dismissing class allegations prior to discovery and class certification proceedings are 'rare' and 'generally disfavored.'" *Saggio v. Medicredit, Inc.*, 2023 WL 3203333, at *4 (E.D. Mo. May 2, 2023) (quoting *McCullen v. Union Pac. R.R. Co.*, 2019 WL 3456815, at *3 (W.D. Mo. July 31, 2019) (collecting cases)).  Rule 12(b)(6) does not give Defendant the opportunity to prematurely challenge Plaintiff's class claims before she has the benefit of discovery.  At the motion to dismiss stage, Plaintiff need only "'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Simpson v. Boeing Co.*, 27 F. Supp. 3d 989, 994 (E.D. Mo. 2014) (quoting *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 269 (W.D. Wis. 2013)).

Defendant challenges the "commonality and predominance" of Plaintiff's meal-break class claims.  Doc. [39] at 14.  A class meets the commonality prerequisite when "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  And those common questions of law or fact must "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).  At this early

stage, Plaintiff has pled facts that plausibly establish the predominance of a common question of law. All of the class members were subject to Defendant's automatic meal deduction policy, and it is plausible that the legality of that policy predominates over any question affecting only individual members of the class.

Defendant argues that, because the DOL Report identifies a variety of employee responses to MHM's meal break policy, by attaching that report to her pleading, Plaintiff "ple[d] herself out of court." Doc. [39] at 13 (footnote omitted). The contents of the DOL Report do not put this case in the same category as *Reynolds v. Little Rock School District*, where the plaintiff attached unambiguous proof of failure to exhaust administrative remedies to his complaint. 854 F. App'x 773, 774 (8th Cir. 2021) (per curiam). On a motion to dismiss, the Court reads the Second Amended Complaint "as a whole," *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009), accepting all well-pled allegations as true and drawing all reasonable inferences in Plaintiff's favor. Applying that standard, the Court finds that Plaintiff has plausibly stated a claim on behalf of the AWA Meal-Break Class.

## IV.  The FLSA does not preempt Plaintiff's Arizona state-law overtime claims.

Defendant argues that the FLSA preempts Plaintiff's state law claims for unpaid overtime because those claims "are derived solely from the FLSA's overtime requirement."[4] Doc. [39] at 16. Allowing Plaintiff to use the AWA as a vehicle to recover damages from the overtime provisions of the FLSA, Defendant contends, "would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the FLSA." *Id.* (quoting *Nelson v. Network Infrastructure Corp*, 2010 WL 11515662, at *2 (D. Ariz. Mar. 30, 2010)). Plaintiff responds that her AWA claims are not preempted because they are broader than her FLSA claims: Her "AWA allegations relate to whether she was timely paid the wages she reasonably expected to be paid," a claim that "entitles her to treble damages under the AWA— more than the maximum damages allowed under the FLSA." Doc. [45] at 20. Because the AWA's coverage and remedies are broader than the FLSA's, the Court agrees with Plaintiff.

The Eighth Circuit has not addressed whether a state law claim that relies on the FLSA's overtime provision is preempted, and other circuits have split on the issue. *Compare Aldridge v.*

---

[4] Plaintiff also claims that Defendant failed to pay regular wages owed under the AWA. *See* Doc. [34] ¶¶ 166, 169, 177; Doc. [45] at 18. Defendant's motion to dismiss pertains only to the overtime portion of Plaintiff's AWA and unjust enrichment claims. *See* Doc. [38] at 2.

13

*Miss. Dep't of Corr.*, 990 F.3d 868, 877 (5th Cir. 2021) (preemption), *and Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007) (same), *with Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761 (9th Cir. 2010), *cert. granted, judgment vacated*, 565 U.S. 801 (2011) (no preemption). District courts of the District of Arizona disagree about whether the FLSA preempts the AWA. *Compare Salgado v. Flowers Foods Inc.*, 2023 WL 5348573, at *4 (D. Ariz. Aug. 21, 2023) (no preemption), *with Salazar v. Driver Provider Phoenix LLC*, 2023 WL 167021, at *2 (D. Ariz. Jan. 12, 2023) (preemption). District courts in the Eighth Circuit have generally found that the FLSA does not preempt state law claims. *See, e.g.*, *Tinsley v. Covenant Care Servs., LLC*, 2016 WL 393577, at *4 (E.D. Mo. Feb. 2, 2016) (collecting cases).

Preemption works like this: "Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018). A conflict occurs when "compliance with both federal and state regulations is a physical impossibility," *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). "In preemption analysis, courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" *Arizona v. United States*, 567 U.S. 387, 400 (2012) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

The AWA does not pose an obstacle to the accomplishment of Congress's purposes for enacting the FLSA. The AWA does not require overtime pay; it requires only that "[e]ach employer, on each of the regular paydays, shall pay to the employees all wages due the employees up to that date." Ariz. Rev. Stat. Ann. § 23-351 (2018). And it allows employees to "recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages." *Id.* § 23-355. The AWA is thus broader than the FLSA in three ways: (1) it requires employers to pay *all* wages due, not just overtime, *id.* § 23-351, (2) it requires employers to pay wages in a timely manner, *id.*, and (3) it authorizes recovery of treble damages, *id.* § 23-355. Congress's express purpose in enacting the FLSA was to "eliminate" the existence of "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. And the

14

FLSA's saving clause allows states to provide more generous wage and hour requirements. *Id.* § 218; *see also Cortez v. Neb. Beef, Inc.*, 266 F.R.D. 275, 283 (D. Neb. 2010).

The FLSA does not demonstrate a "clear and manifest purpose" to supersede the states' ability to legislate more generous protections for labor. *Rice*, 331 U.S. at 230. Plaintiff's alleged unpaid overtime wages are "wages due" under the AWA based on the substantive right to overtime pay conferred by the FLSA. But the AWA goes beyond the FLSA by requiring Defendant to pay those overtime wages in a timely manner and authorizing treble damages. The AWA does not interfere with the FLSA's protections; it augments them. "[I]t is possible for Defendant[], like any other private employer in Arizona, to comply with the relevant provisions of the FLSA and the AWA simultaneously. Employers can be responsible for paying overtime under the FLSA and for the timely payment of the overtime wages as required by the AWA." *Salgado*, 2023 WL 5348573, at *3. For the same reasons, the FLSA does not preempt Plaintiff's unjust enrichment claim.[5] Therefore, Plaintiff's state-law claims are not preempted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Partial Motion to Dismiss Second Amended Complaint, Doc, [38], is GRANTED in part and DENIED in part. The motion is granted as to Plaintiff's individual and collective claims related to security screening only.

**IT IS FURTHER ORDERED** that Plaintiff is GRANTED leave to amend her Second Amended Complaint, Doc. [34], in accordance with this Memorandum and Order. Plaintiff must file a Third Amended Complaint that complies with Eastern District of Missouri Local Rule 4.07 no later than October 16, 2023.

A separate order of partial dismissal accompanies this Memorandum.

Dated this 30th day of September, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

---

[5] "The Court notes that although [Plaintiff] did not specifically plead [her statutory and common law claims] in the alternative . . . , she will not be able to recover double damages for the same injury." *Davenport v. Charter Commc'ns, LLC*, 2012 WL 5050580, at *3 (E.D. Mo. Oct. 18, 2012).

15