**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PENNY LEWIS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:22-cv-00228-SEP |
| MHM HEALTH PROFESSIONALS, LLC, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiff's Arizona Wage Act Security Screening and Unjust Enrichment Claims, Doc. [130].  For the reasons set forth below, the motion is granted.

**FACTS AND BACKGROUND[1]**

The Arizona Department of Corrections ("AZDOC") requires employers, volunteers, interns, program associates, and contractors to undergo security screenings to enter Arizona prisons.  *See* Doc. [132] ¶ 1; *see also* Ariz. Dep't of Corrections, Dep't Order 708 – Searches (Feb. 28, 2020), as amended ("AZDOC Department Order 708").[2]  AZDOC wardens controlled the security screening procedures at Arizona prisons.  *See* Doc. [132] ¶ 2; *see also* AZDOC Department Order 708 at 3 ¶¶ 1.1-1.2; AZDOC officers conducted the security screenings at Arizona prisons.  Doc. [132] ¶ 3; *see also* AZDOC Department Order 708, at ¶¶ 1.5, 1.6, 3.2.1 (detailing visitor search procedures performed by prison staff); Doc. [132-5] (Deposition of Penny Lewis) 18:22-25 ("at the main gate the Officer there asks for your badge, makes sure you're supposed to be there, makes sure you don't have any weapons on you.  Then you proceed to go through there."), 21:6-10 (security officers at the main gate), 29:8-24 (before entering the prison yard, there is another metal detector and an "Officer" is required to "check" her in).  MHM Health Professionals ("MHM") employed staff who provided medical care within Arizona prisons, including Plaintiff.  Doc. [106] ¶¶ 53, 107, 112-113.  Though MHM did not control the

---

[1] Unless otherwise noted, the facts in this section are not disputed.

[2] "The district court may take judicial notice of public records."  *Stahl v. USDA*, 327 F.3d 697, 700 (8th Cir. 2003).

1

security screenings, it expected its employees to comply with AZDOC policies and undergo security screenings.  *Id.;* Doc. [132] ¶ 3; *see also* Doc. [132-4] (Deposition of MHM Regional Director Grant Roberts)16:4-6 ("we were responsible for the medical care only, not the security piece").

MHM's policy was to not compensate employees for time spent undergoing security screenings unless they reported unusual delays that made them late to work.  Doc. [132] ¶ 7.  If an employee was late for work due to an abnormally lengthy security screening, the employee could submit a Time Keeping Exemption form to request payment for that time.  *Id.*  For example, MHM would compensate employees for security screenings when AZDOC was "checking vehicles or [when] the x-ray machines were down."  Doc. [143-1] ¶ 8.  MHM did not provide for compensation for undergoing security screenings at prisons in its employee contracts or elsewhere.  Doc. [132] ¶ 6.  Plaintiff Penny Lewis knew during her employment that MHM did not compensate employees for time spent undergoing security screenings at the prisons.  *Id.* ¶ 8.  Other MHM employees testified similarly in their depositions.  *See* Doc. [132-6] 64:10-16 (Deposition of MHM employee Kendra Jensen) (It's unfair "that we're expected to wait in this long line and go through all of these security checkpoints that are required for me to get to work without being paid while I'm doing them"); Doc. [132-7] 66:5-9 (Deposition of MHM employee Jessica Knight) (had to go through security screening and "we didn't get paid for it").  Plaintiff Lewis resigned from her employment with MHM in March 2022.  *Id.* ¶ 9.  The Court dismissed Plaintiff's claims regarding security screenings under the Fair Labor Standards Act, Doc. [96], but the state law claims remain.  Plaintiff alleges that MHM uses timekeeping practices that do not properly compensate employees for time spent in security screenings.  Doc. [106] ¶ 188.

**LEGAL STANDARD**

A court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56.  Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

2

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quotation marks omitted). The non-movant must then "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The evidence must be viewed "in the light most favorable to, and making all reasonable inferences for, the nonmoving party." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 404 (8th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). "'If reasonable minds could differ as to the import of the evidence,' summary judgment is inappropriate." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1377 (8th Cir. 1996) (quoting *Anderson*, 477 U.S. at 250).

DISCUSSION

As relevant here, Plaintiff alleges that MHM violated the Arizona Wage Act (AWA), ARIZ. REV. STAT. § 23-350, by failing to pay its employees for time spent undergoing security screenings at Arizona prisons (Count II). *See* Doc. [106] ¶¶ 18, 104, 201-220. Plaintiff requests treble damages under the AWA and also brings a claim for unjust enrichment due to the same practice (Count III). Doc. [106] ¶¶ 222-27. Defendant moves for summary judgment.[3]

I.    **Defendants are entitled to summary judgment on Plaintiff's AWA security screening claim.**

Plaintiff argues that MHM wrongfully withheld wages owed to her and employees for time spent working, specifically doing security screenings, in violation of the AWA. Doc. [106]

---

[3] Additionally, Plaintiff argues that Defendant's motion for summary judgment is premature. As explained in the Memorandum and Order issued on this date relating to Defendant's Motion for Partial Summary Judgment on the Kronos-related claims, ruling on Defendant's motion for summary judgment is not premature given the discovery completed and lack of a Rule 56(d) affidavit identifying particular missing facts. *See* Doc. [159] at 9-11. That discussion will not be repeated here.

¶ 9 ("MHM's failure to pay wages to its workers in Arizona, on time and in full, also violates the Arizona Wage Act"), *id.* ¶ 217 ("Neither Lewis nor the AWA Kronos, Meal Break, and Security Class members authorized MHM to withhold the wages and overtime pay due to them."); *see also id.* ¶¶ 110-11.  The parties do not dispute that MHM generally did not pay employees for time spent during security screenings; they dispute whether employees were owed wages for that time.

The Court is bound to apply the substantive state law of Arizona, as determined by the Arizona legislature or Arizona Supreme Court.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938).  The AWA states that "if an employer, in violation of this chapter, *fails to pay wages due* any employee, the employee may recover in a civil action against an employer."  ARIZ. REV. STAT. § 23-355(A) (emphasis added).  The central question, then, is whether MHM has failed to pay wages due Plaintiff.  The AWA defines a "wage" as "nondiscretionary compensation due an employee in return for labor or services rendered by an employee *for which the employee has a reasonable expectation to be paid* whether determined by a time, task, piece, commission or other method of calculation."  ARIZ. REV. STAT. § 23-350(7) (emphasis added).  A "reasonable expectation" may be defined either (1) expressly in a contract, (2) by an "implied contract between the parties based upon their past dealings," *Zavaleta v. OTB Acquisition LLC*, 2021 WL 824419, at *5 (D. Ariz. Mar. 4, 2021), or (3) by an employer's "policy or practice [to pay] such compensation," *Morgan v. Freightliner of Ariz., LLC*, 2017 WL 2423491, at *7 (D. Ariz. June 2, 2017).

First, MHM did not have a contract with Plaintiff or other employees that provided for compensation for undergoing security screenings at prisons.  *See* Doc. [132] ¶ 6; Doc. [132-4] (Deposition of MHM Regional Director Grant Roberts) (no written policy to compensate for security screening); 52:8-13 (MHM was not obligated to pay for security screenings).  Plaintiff has not produced any evidence to the contrary nor claimed that any such contract exists.  So no expectation for payment for security screening could have been based on an express provision of an MHM employment contract.

Second, past dealings between MHM and Plaintiff do not show a policy or practice of paying employees for time spent undergoing security screening.  Plaintiff Penny Lewis knew during her employment that MHM did not compensate employees for time spent undergoing security screenings at the prisons.  Doc. [132] ¶ 8.  Other employees also testified in depositions

that they knew they were expected to go through security screenings without being paid. *See* Doc. [132-6] 64:10-16 (Deposition of MHM employee Kendra Jensen) (complaining about expectation to go through security without being paid); Doc. [132-7] 66:5-9 (Deposition of MHM employee Jessica Knight) (same). Further, MHM paid for security screenings only on the rare instances in which an unusually lengthy security screening caused Plaintiff to be late for her shifts, Doc. [132] ¶ 7, cementing that employees knew they would not ordinarily be paid for time spent in security.

In *Zavaleta*, the plaintiff was a restaurant manager who earned a salary and performed odd jobs at the restaurant as a handyman. 2021 WL 824419, at *5. The court ruled that the employer did not owe plaintiff "wages" under the AWA for the handyman work because he could not have reasonably expected payment for that work. *Id.* at *5-6. The employer never "promised payment before any handyman job," nor did either party discuss payment. *Id.* at *6. Because no express or implied contract, past practice, or company policy suggested that the plaintiff would receive additional pay for these tasks, the plaintiff's claim for unpaid wages under the AWA failed. *Id.* This case resembles *Zavaleta*. The parties agree that MHM did not pay employees for time spent going through security screening. Doc. [106] ¶¶ 104, 110; Doc. [132] ¶ 6. The fact that Plaintiff explained in her deposition that MHM did not pay her for time spent undergoing security screenings except in exceptional circumstances weighs against her claim. Doc. [132] ¶ 8; Doc. [132-5] 70:19-73:23.

Plaintiff's counterarguments fail. Despite Plaintiff's arguments to the contrary, the Court is bound to apply Arizona law. The AWA, which Plaintiff sues under, defines wages as compensation "for which the employee has a reasonable expectation to be paid." ARIZ. REV. STAT. § 23-350(7). Plaintiff asserts that it would "contravene the letter and spirit of the AWA to allow MHM to avoid payment to Plaintiffs because it chose not to pay them ***their promised hourly rates*** for certain hours." Doc. [143] at 12 (emphasis added).[4] But the AWA does focus precisely on what employees were promised—and here, employees were not promised payment for all time spent undergoing security screenings.

Plaintiff further asserts that her job description includes requirements to "[u]nderstand and comply with safety and security rules and regulations of the institution" and "[c]oordinate care closely with security staff while maintaining positive, collaborative relationships." Doc.

---

[4] Unless otherwise noted, page numbers for docket entries refer to the CM/ECF page number.

[143] at 11.  Based on that language, Plaintiff argues that MHM failed to honor its promise to pay Plaintiff.  Plaintiff cites her job offer letter for the proposition that, "[f]or all work performed, Plaintiffs were promised an hourly wage." *Id.*  The Court cannot discern which part of the job offer letter Plaintiff purports to cite but notes that the job offer letter itself states, "you will receive an hourly rate of $40.00, paid on a bi-weekly basis, less appropriate deductions and withholdings.  As an hourly employee, you will be required to track all hours worked to ensure accurate timekeeping and pay" and "[a]ll employees are required to accurately report all hours worked by using our timekeeping system, Kronos.  This system ensures that your time will be accurately recorded and calculated in accordance with company and contract policies, resulting in fairness for all employees."  Doc. [143-5] at 1.

Even drawing all reasonable inferences in favor of Plaintiff, the text of the job offer letter is not sufficient to allow a reasonable factfinder to find that Plaintiff had a reasonable expectation of being paid for undergoing security screenings.  The letter might ground an inference that employees are owed payment for time tracked in Kronos, but it does not support an inference that employees are owed payment for time spent undergoing security screenings, and Plaintiff has cited nothing in the record that does.  Therefore, there is no dispute of material fact on this issue, and MHM is entitled to judgment as a matter of law.

## II.   <u>Defendant is entitled to summary judgment on Plaintiff's unjust enrichment claim relating to security screenings.</u>

Plaintiff's unjust enrichment claim likewise fails as a matter of law.  To prevail on an unjust enrichment claim, a plaintiff must show:  "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *In re Est. of Blue*, 2008 WL 2315681, at *2 (Ariz. Ct. App. June 3, 2008).  For an unjust enrichment claim, "[a] duty to compensate will be imposed when there is an expectation of payment or compensation for services at the time the services are rendered." *Id.* (citing *Pyeatte v. Pyeatte*, 661 P.2d 196, 203 (Ariz. Ct. App. 1983)).  Like her AWA claim, Plaintiff's unjust enrichment claim fails because, based on her own admissions, she had no reasonable expectation of compensation for time spent undergoing security screenings.  Plaintiff expressly admitted that during her employment, she was aware that MHM did not pay employees for time spent in

security screenings.  *See* Doc. [106] ¶¶ 104, 110; Doc. [132] ¶ 8.  Without any evidence of an expectation of payment, Plaintiff's unjust enrichment claim based on security screenings fails.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment on Plaintiff's Arizona Wage Act Security Screening and Unjust Enrichment Claims, Doc. [130], is **GRANTED.**

**An Order of Partial Judgment will accompany this Memorandum and Order.**

Dated this 31st day of March, 2026.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE